# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NEUROSURGICAL CARE, LLC,

      Plaintiff,

     v.

DOC SOLUTIONS LLC, and
MARK KAISER,

      Defendants.

Civil Action No.:

**COMPLAINT**    19    5751

*Jury Trial Demanded*

**FILED**

DEC 0 6 2019

KATE BARKMAN, Clerk
By _____ Dep. Clerk

## COMPLAINT

Plaintiff, Neurosurgical Care, LLC, a Pennsylvania Limited Liability Company ("Neurosurgical Care" or "Plaintiff"), by and through its undersigned attorneys, brings this Complaint against defendants Doc Solutions LLC and Mark Kaiser. In support of its Complaint, Plaintiff Neurosurgical Care hereby alleges as follows.

## BACKGROUND

1.    Plaintiff, Neurosurgical Care is an outpatient office providing medical services, located in Royersford, Pennsylvania.

2.    Neurosurgical Care was founded by Dr. Sagi Kuznits, a practicing neurosurgeon, who performs mainly inpatient neurosurgeries at hospitals in Paoli, Pottstown, and Phoenixville, Pennsylvania, and for some of these hospitals he is the only neurosurgeon.

3.    Dr. Kuznits attended college at the University of Pennsylvania, medical school at Temple University and completed his neurosurgery internship and residency at Northwestern University.

4.    Dr. Kuznits is a board-certified neurosurgeon.

5.     Dr. Kuznits has been practicing medicine for 25 years.

6.     Dr. Kuznits performs complex spinal surgeries as a last resort to address severe, chronic pain arising from impingement of nerves and spine due to degenerative, traumatic, neoplastic, and infectious etiology.

7.     At Neurosurgical Care, Dr. Sagi Kuznits provides pre-operative and post-operative care to patients, as well as offers alternatives to invasive surgeries to improve the management of severe, chronic pain.

8.     Dr. Kuznits has witnessed the difficulty of controlling pain and the addictive nature of pain medications and narcotics that patients suffering from severe, chronic pain often use.

9.     While trained as a surgeon, Dr. Kuznits is interested in using all modalities he has found effective to improve the control of severe, chronic pain, including less invasive electronic stimulation procedures that do not have the potential concomitant addictive effects of opioid prescriptions.

10.     One technology that Dr. Kuznits has found effective for his patients' pain management is neurostimulation, a method of stimulating the nervous system to assist individuals in reducing their chronic pain.

11.     In particular, Dr. Kuznits used and administered Stivax to his patients in order to assist with the treatment of their chronic pain.

12.     Stivax is a "non-narcotic and minimally invasive form of neurostimulation" which is represented as "one of the only FDA approved microchip controlled microstimulation devices for treating back, joint and arthritic pain." *See* Ex. A, Signal Health Group Stivax Website Screenshot 1.

13.     Stivax is manufactured by Biegler GmbH, a company located in Austria.

2

14.    The manufacturer distributes in the United States through distribution partners.

15.    Stivax distribution partners include Solace Advancement, Signal Health Group, and Doc Solutions.

16.    One Stivax website represents that "studies indicate that the majority of patients describe at least 50% reduction in pain and further accumulation of pain reduction in subsequent months. Some patients, having solely relied upon narcotic drug therapies, have been able to discontinue the use of these conventional medicines and extend walking distances." *See* Ex. B, Signal Health Group Stivax Website Screenshot 2.

17.    Stivax was marketed and sold to Dr. Kuznits by Doc Solutions and Mark Kaiser, an authorized distributor of Stivax.

18.    Doc Solutions and Mark Kaiser advised Neurosurgical Care to bill Medicare and other government health care payors for Stivax using codes that they knew to be improper for Stivax.

19.    Neurosurgical Care used these codes, and, as a result, has been harmed by the fraudulent billing and coding information provided by Doc Solutions and Mark Kaiser.

20.    Neurosurgical Care seeks damages from Doc Solutions and Mark Kaiser to compensate for the damages suffered as a result of the fraudulent information peddled by Doc Solutions and Mark Kaiser.

## PARTIES

21.    Plaintiff repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

22.    Plaintiff Neurosurgical Care is a Pennsylvania Limited Liability Company.

3

23.     Defendant Doc Solutions LLC ("Doc Solutions") is a Florida Limited Liability Company, with a principal place of business listed at 6160 State Road 70 E #103, Bradenton, FL 34203, and a mailing address of 1767 Lakewood Ranch Blvd. #326, Bradenton, FL 34211.

24.     Defendant Doc Solutions is a distributor of Stivax, and promoted, marketed, and distributed Stivax to Plaintiff Neurosurgical Care.

25.     Defendant Mark Kaiser, is an Authorized Member of Defendant Doc Solutions with a business address listed at 6160 State Road 70 E #103, Bradenton, FL 34203, and is authorized to manage and control Doc Solutions. Upon information and belief, Defendant Mark Kaiser resides at 16617 5th Avenue East, Bradenton, FL 34212.

**JURISDICTION AND VENUE**

26.     Plaintiff repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

28.     This Court has personal jurisdiction over the Defendants because they did business in this state and District, and they have sufficient minimum contacts in this state and District through the promotion, marketing, and sale of Stivax in this state and District, such that the exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

29.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims here occurred in the Eastern District of Pennsylvania. Defendants marketed and sold Stivax in this state and District, Defendants received

4

substantial compensation and profits from the sale of Stivax within this state and District, and engaged in deliberate or, at best, negligent misrepresentations concerning the correct billing, coding, and reimbursement for Stivax within this state and District, and the transactions between the Defendants and Neurosurgical Care LLC occurred in this state and District, and a substantial part of the property that is the subject of this action is situated in the District.

30.     Venue is also proper under Section 1391(c) because defendants are subject to this Court's personal jurisdiction in the District.

## FACTUAL BACKGROUND

31.     Plaintiff repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

32.     Defendant Doc Solutions is an authorized distributor of Stivax in the United States.

33.     Defendant Doc Solutions promoted, marketed, and sold Stivax throughout the United States and to Plaintiff Neurosurgical Care in Pennsylvania.

34.     Defendant Mark Kaiser, the Chief Executive Officer of Doc Solutions, and the National Account Manager for the Stivax Neurostimulator for Doc Solutions, promoted, marketed and sold Stivax throughout the United States and to Plaintiff Neurosurgical Care in Pennsylvania.

35.     Kaiser visited Plaintiff Neurosurgical Care in early 2017 and presented Stivax to Dr. Kuznits, in order to market and promote the product and attempt to sell the product to Neurosurgical Care.

36.     Kaiser provided specific instructions regarding the appropriate billing codes for use with Stivax, and assured Dr. Kuznits that the codes were reviewed and approved by a third-party biller with expertise in Medicare coding.

5

37.    Dr. Kuznits and Plaintiff Neurosurgical Care take compliance with laws and regulations seriously and always seek to bill the appropriate codes for devices and procedures.

38.    It is typical for distributors of medical devices, such as Doc Solutions, to advise practitioners on appropriate billing codes, as a distributor's understanding of reimbursement for its devices should be superior to an individual physician's understanding.

39.    Defendants Doc Solutions and Mark Kaiser made a series of fraudulent and misleading misrepresentations to Plaintiff Neurosurgical Care regarding the appropriate coding for reimbursement for Stivax under Medicare.

40.    On March 14, 2017, Dr. Kuznits emailed Defendant Kaiser to determine whether it was appropriate to bill for Stivax under Medicare reimbursement code L8679. *See* Ex. C, 3-14-2017 Email Correspondence.

41.    Defendant Kaiser responded by sending the LinkedIn page of the compliance officer of Doc Solutions and confirmed that the compliance officer and Doc Solutions' lead billing company, Clinic Doc, vouched for the coding. *Id.*

42.    On March 15, 2017, Defendant Kaiser connected Dr. Kuznits with Dr. Tim Warren of Titan Medical Compliance "regarding compliance matters of the Stivax device." *See* Ex. D, 3-15-2017 Email Correspondence.

43.    Defendant Kaiser and Dr. Warren advised against using the Medicare billing code 64555 for Stivax in certain instances. *Id.*

44.    On March 17, 2017, Defendant Kaiser connected Dr. Kuznits to another physician who was using Stivax. *See* Ex. E, 3-17-2017 Email Correspondence. Dr. Kuznits mainly wanted another medical physician's input as to the efficacy of Stivax.

6

45.     Defendant Kaiser connected Dr. Kuznits to Dr. Alex Landfield, who stated that he has been using Stivax and that "the response has been excellent in many (but not all) of the cases." Notably, Dr. Landfield further stated that he had "been billing as recommended by [Defendant Kaiser] and have not had problems." *Id.*

46.     On December 13, 2017, Defendant Kaiser sent Dr. Kuznits Stivax coding via email, representing that the memo was to be viewed "as a way to proceed forward" and was the product of work with their compliance team. *See* Ex. F, 12-13-2017 Email Correspondence.

47.     This coding set identified Medicare billing code L6789 as an appropriate Medicare reimbursement code for Stivax. *Id.*

48.     Having no reason to question the representations of Doc Solutions and Kaiser, Dr. Kuznits forwarded the aforementioned email to the Billing Specialist at Neurosurgical Care.

49.     Defendants Doc Solutions and Mark Kaiser repeatedly and knowingly made these false and misleading misrepresentations with the intent of inducing Neurosurgical Care to purchase Stivax.

50.     Neurosurgical Care and Dr. Kuznits relied on the representations of Doc Solutions and Mark Kaiser. As noted above, it is typical for practitioners to rely on the representations or directions of the manufacturer or distributors of medical devices.

51.     Based on these repeated fraudulent misrepresentations, Neurosurgical Care began purchasing Stivax from Doc Solutions starting in April 2017 and continued to purchase Stivax up to and including through June 2018.

52.     Neurosurgical Care successfully treated patients using Stivax.

53.     Many patients were happy and satisfied with the treatment they received.

7

54.     As a result of the treatment, patients were able to reduce, and in some cases avoid the use of highly addictive narcotics.

55.     Unbeknownst to Neurosurgical Care, L8679 was not an appropriate reimbursement code for use with Stivax because Medicare considered it to be a form of electroacupuncture, and acupuncture is not reimbursable under Medicare.

56.     At no time during Neurosurgical Care's interactions with Doc Solutions or Mark Kaiser did Doc Solutions or Mark Kaiser describe Stivax as electroacupuncture or acupuncture.

57.     Rather, Doc Solutions and Mark Kaiser described Stivax as neurostimulation, a procedure more similar to other types of modalities that are reimbursed by Medicare, such as percutaneous electrical nerve stimulation.

58.     Doc Solutions and Mark Kaiser intentionally concealed that Stivax was considered to be an electroacupuncture device by the FDA, and intentionally misrepresented that Stivax is reimbursable under Medicare using Medicare billing code L8679.

59.     In the alternative, Defendants knew or should have known that the Medicare billing code L8679 was not an appropriate reimbursement code for Stivax, but nonetheless misrepresented that the code was an appropriate reimbursement code for Stivax.

60.     Relying on Defendant Doc Solutions' and Defendant Kaiser's misrepresentations, Plaintiff Neurosurgical Care billed code L8679 for roughly 58 claims for applying the Stivax procedure, for a total of roughly $396,973.58.

61.     On July 12, 2018, SafeGuard Services LLC, the Northeastern Unified Program Integrity Contractor for the Centers for Medicare and Medicaid Services ("CMS") conducted an audit of Neurosurgical Care and concluded that certain procedures reimbursed under code L8679 were not reimbursable by Medicare.

8

62.     While the audit was taking place, Neurosurgical Care inquired as to whether it should change any of its billing practices. SafeGuard Services LLC instructed Neurosurgical Care to continue its billing practices until Neurosurgical Care heard otherwise.

63.     On September 13, 2018, Neurosurgical Care received the audit report from the on-site visit conducted by SafeGuard Services.

64.     The audit report concluded that certain reimbursed procedures, including procedures that used billing code L8679, would be denied based on FDA interpretation about devices.

65.     Immediately thereafter, Neurosurgical care stopped billing the L8679 code after becoming aware of the potential error in using this code.

66.     After receiving the audit report, Neurosurgical Care was willing to repay any reimbursement amount or overpayment regarding Stivax.

67.     The audit report stated that Neurosurgical Care would "receive remittance advice instructions from the [Medicare Administrative Coordinator ("MAC")] regarding the specifics of the overpayment and repayment process."

68.     The audit report also instructed Neurosurgical Care to "not forward payment or appeal this determination until you have been notified by the MAC as the MAC controls, tracks, and completes all appeal requests."

69.     However, Neurosurgical Care never received any further communications from SafeGuard Services LLC or CMS about the overpayment and repayment process or any appeal process.

70.     Instead, in December 2018, Plaintiff Neurosurgical Care and Dr. Sagi Kuznits received Civil Investigative Demands from the United States Attorney's Office for the Eastern

9

District of Pennsylvania and have been subjected to an investigation which relates to their billing of Stivax under Medicare billing code L8679.

71.     Neurosurgical Care promptly forwarded the fraudulent misrepresentations of Doc Solutions and Kaiser.

72.     Despite being a victim of a fraud, Neurosurgical Care has been forced to spend significant funds in connection with defending itself against this investigation.

73.     Unfortunately, it appears that other authorized distributors of Stivax are also making similar misrepresentations as Doc Solutions. For example, Signal Health Group, which is a Stivax distributor, represents on its website that Stivax is "Medicare accepted!":



*See* Ex. G, Signal Heath Group Stivax Website Screenshot 3.

74.     Medical practices and practitioners would and are relying on these sorts of misrepresentations and fraudulent statements from distributors.

75.     This indicates a larger scheme among distributors of Stivax and the manufacturer of Stivax to peddle Stivax by directly stating that it is appropriately reimbursable under Medicare guidelines.

## COUNT I – FRAUDULENT MISREPRESENTATION

76.     Neurosurgical Care repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

77.     Defendants represented to Plaintiff on multiple occasions that billing code L8679 for Stivax procedures was appropriate.

78.     These representations were material to the transactions at issue because Plaintiff purchased Stivax and billed Medicare as instructed by Defendants between the period of April 2017 and June 2018.

79.     Defendants made these misrepresentations falsely, with knowledge of their falsity, or with recklessness as to whether the misrepresentations were true or false.

80.     Defendants made these misrepresentations with the intent of misleading Plaintiff and the intent of inducing Plaintiff to rely on the misrepresentations to induce Plaintiff to begin purchasing Stivax and continue to purchase and use Stivax.

81.     Neurosurgical Care justifiably relied on these misrepresentations and, in reliance on the misrepresentations, purchased Stivax and billed Stivax according to the codes offered by Defendants.

82.     As a direct and proximate cause of Defendants' fraudulent misrepresentations, Plaintiff was harmed in an amount exceeding $150,000, to be determined at trial.

## COUNT II – NEGLIGENT MISREPRESENTATION

83.     Neurosurgical Care repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

84.     Defendants negligently misrepresented to Plaintiff on multiple occasions that billing code L8679 for Stivax procedures was appropriate.

11

85.     Defendants knew or should have known that the material misrepresentations they made were false.

86.     Defendants knowingly made these material misrepresentations with the intent to induce Plaintiff to begin purchasing and continue to purchase and use Stivax.

87.     As a direct and proximate cause of Defendants' negligent misrepresentations, Plaintiff was harmed in an amount exceeding $150,000, to be determined at trial.

## COUNT III – FRAUDULENT CONCEALMENT

88.     Neurosurgical Care repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

89.     At all times relevant hereto, Defendants owed plaintiff a duty to disclose all information that they knew or reasonably should have known regarding billing codes to the Plaintiff.

90.     Defendants represented to Plaintiff on multiple occasions that billing code L8679 for Stivax procedures was appropriate.

91.     These representations were material to the transactions at issue because Plaintiff purchased Stivax and billed Medicare as instructed by Defendants between the period of April 2017 and June 2018.

92.     Defendants made these misrepresentations falsely, with knowledge of their falsity, or with recklessness as to whether the misrepresentations were true or false.

93.     Defendants made these misrepresentations with the intent of misleading Plaintiff and the intent of inducing Plaintiff to rely on the misrepresentations to induce Plaintiff to begin purchasing Stivax and continue to purchase and use Stivax.

12

94.     Defendants intentionally concealed true and correct information about Stivax billing codes in order to deceive Plaintiff.

95.     Neurosurgical Care justifiably relied on these misrepresentations and, in reliance on the misrepresentations, purchased Stivax and billed Stivax according to the codes offered by Defendants.

96.     As a direct and proximate cause of Defendants' fraudulent misrepresentations, Plaintiff was harmed in an amount exceeding $150,000, to be determined at trial.

## COUNT IV -- NEGLIGENCE

97.     Neurosurgical Care repeats, realleges, and incorporates here by reference each of the foregoing and subsequent allegations of this Complaint as if set forth fully herein.

98.     Defendants provided information to Plaintiff which they knew or should have known was incorrect and false.

99.     Neurosurgical Care reasonably relied on Defendants' representations and instructions concerning billing codes for Stivax.

100.    Defendants owed Plaintiffs a duty to provide accurate information with respect to billing codes for the product that Defendants promoted, marketed, and sold to Plaintiff.

101.    Defendants breached this duty by providing materially false information regarding billing codes for the product that Defendants promoted, marketed, and sold to Plaintiff.

102.    As a direct and proximate cause of this breach, the Plaintiff suffered damages exceeding $150,000, in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

103.    Neurosurgical Care demands a jury trial.

13

## **PRAYER FOR RELIEF**

WHEREFORE, Neurosurgical Care respectfully requests that this Court enter judgment in its favor and against Defendants and provide the following relief:

A.      An award for Neurosurgical Care for all damages incurred by Neurosurgical Care in purchasing and billing for Stivax under codes that Defendants fraudulently provided,

B.      An award for Neurosurgical Care for the sums for which the United States Attorney's Office for the Eastern District of Pennsylvania has and will seek payment.

C.      An award of reasonable attorneys' fees and costs.

D.      An award to Plaintiff of such other and further relief as this Court may deem just and proper.

DATED: December 6, 2019

**DLA PIPER LLP (US)**

John D. Huh
PA Attorney ID No.: 203230
Brenna D. Kelly
PA Attorney ID No.: 320433
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, PA 19107
T: (215) 656-2450
F: (215) 606-2150
john.huh@us.dlapiper.com
brenna.kelly@us.dlapiper.com
*Attorneys for Plaintiff Neurosurgical Care, LLC*

# Exhibit "A"

## WHAT IS STIVAX?

Stivax (pronounced Steevax) is one of the only FDA approved microchip controlled microstimulation devices for treating back, joint and arthritic pain. The device may only be prescribed and applied by a licensed medical professional. A non-narcotic and minimally-invasive form of neurostimulation, Stivax has been proven to effectively decrease pain, increase mobility and improve the quality of life for patients suffering from syndromes such as:



Chronic Back and Neck Pain
Peripheral Artery Disease (PAD)
Sciatica
Fibromyalgia
Zoster
Peripheral Vascular Disease Neuropathy
Complex Regional Pain Syndrome (CRPS)
Post-Surgical Pain
Diabetic Peripheral Neuropathy
Depression and Insomnia
(increases endorphins)
Various neuropathies

Traumatic Nerve Injuries
Migraines
Herpetic Neuralgia
Refractory Angina
Traumatic Nerve Injuries
Reflex Sympathetic Dystrophy
Occipital Neuralgia
Trigeminal Neuralgia
Post amputation Pain
Lateral Femoral Cutaneous Neuropathy
Other conditions that have failed
conventional therapies

**CALL US 888.345.9116**

# Exhibit "B"



**PROVEN**
**BY STUDY**

Randomized, controlled studies indicate that the majority of patients describe at least 50% reduction in pain and further accumulation of pain reduction in subsequent months. Some patients, having solely relied upon narcotic drug therapies, have been able to discontinue the use of these conventional medicines and extend walking distances.

22% improved their walking distance by 50 - 100%          30% improved their walking distance by 400 - 800%
30% improved their walking distance by 100 - 400%          18% improved their walking distance by > 800%

# Exhibit "C"

**From:** Mark Kaiser <kaisermarkd@hotmail.com>
**Date:** March 14, 2017 at 6:31:35 PM EDT
**To:** Sagi Kuznits <skuznits@aol.com>
**Subject: Re: Doc Solutions Order Form**

Correct.

For reference, here is who our compliance officer is and his LinkedIn profile showing his credentials:

https://www.linkedin.com/in/doctimm/

Our lead billing company, Clinic Doc, who vouches for the coding:

https://clinicdr.com/

Please let me know how else I can help.

Thank You,

Mark

---

**From:** Sagi Kuznits <skuznits@aol.com>
**Sent:** Tuesday, March 14, 2017 6:27:42 PM
**To:** Mark Kaiser
**Subject: Re: Doc Solutions Order Form**

NC000124

Thxs. I just want to make sure that it is appropriate to bill the L8679 code for this device. It is placed externally not implanted in the body like a spinal cord stim generator

Sent from my iPhone

On Mar 14, 2017, at 6:22 PM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:

HI Doc:

We are moving to a Quick Books style of invoicing to make things easier for everyone involved, we should have that up and running in 2-3 weeks.

Until we get to that point we are requesting every office fill out and either scan/email or fax back the attached order form.

Once we have this and the Credit Card Auth form that I will send in a separate email in a moment we will be able to solidify a training date.

Please let me know if you have any further questions.

Thank You,

Mark

Cell: 317-691-7191

NC000125

<DOC Order Form.pdf>

NC000126

# Exhibit "D"

**From:** Sagi Kuznits <skuznits@aol.com>
**To:** Timothy Warren <stivax@titanmedicalcompliance.com>
**Cc:** Mark Kaiser <kaisermarkd@hotmail.com>
**Subject:** Re: Introduction
**Date:** Fri, Mar 24, 2017 5:46 pm

Hi there. Mark sent me the billing codes for the stivax. Is it appropriate to bill the L8679 code. It is used for generator implants but this device is not implanted. Please advise. Thxs

Sent from my iPhone

On Mar 24, 2017, at 5:21 PM, Timothy Warren <stivax@titanmedicalcompliance.com> wrote:

> Dr. Sagi,
>
> I do not suggest any coding of the 64555 with any insurance company without having prior authorization.
>
> Dr. Warren
>
> **From:** Sagi Kuznits <skuznits@aol.com>
> **Sent:** Wednesday, March 22, 2017 4:34:49 PM
> **To:** Mark Kaiser
> **Cc:** Timothy Warren
> **Subject:** Re: Introduction
>
> Hey mark. Any word from the Dr Warren
>
> Sent from my iPhone
>
> On Mar 16, 2017, at 9:37 AM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:
>
> > Many commercial policies have gone away from paying the 64555 code as well. I would suggest, as I am sure Dr. Warren would as well, having billing pull the commercial policy plans of the patients you are looking to place the device on and checking to see if they still recognize the code and go from there.
> >
> > 64555 is still an accepted billing practice for billing within a surgery center via the facility fee.
> >
> > **From:** Sagi Kuznits <skuznits@aol.com>
> > **Sent:** Thursday, March 16, 2017 9:01:11 AM
> > **To:** Mark Kaiser

NC000145

**Cc:** stivax@titanmedicalcompliance.com
**Subject:** Re: Introduction

Never used auricular stim with Medicare patients

Sent from my iPhone

On Mar 16, 2017, at 8:57 AM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:

> Not to overstep my boundaries here, but the 64555 code is not suggested
> to be used with Stivax application. Medicare deemed it an inappropriate
> code at the end of 2016.
>
> _____
>
> **From:** Sagi Kuznits <skuznits@aol.com>
> **Sent:** Thursday, March 16, 2017 8:55:48 AM
> **To:** Mark Kaiser
> **Cc:** stivax@titanmedicalcompliance.com
> **Subject:** Re: Introduction
>
> Outpatient setting
>
> Sent from my iPhone
>
> On Mar 16, 2017, at 8:37 AM, Mark Kaiser <kaisermarkd@hotmail.com>
> wrote:
>
> > Doc;
> >
> > Were you billing the 64555 out as you being the rendering
> > provider in a surgery center or in an outpatient setting?
> >
> >
> > Thank,
> >
> > Mark
> >
> > _____
> >
> > **From:** Sagi Kuznits <skuznits@aol.com>
> > **Sent:** Thursday, March 16, 2017 8:15:43 AM
> > **To:** Mark Kaiser
> > **Cc:** stivax@titanmedicalcompliance.com
> > **Subject:** Re: Introduction
> >
> > Good morning dr warren. I have used the pstim and nss
> > auricular units. I billed the 64555 code. Before I purchase the
> > Stivax system I want to make sure that the Generator implant
> > code is appropriate as I do not want any issues with Medicare.
> > Please advise.
> > Thank you.

NC000146

Sent from my iPhone

On Mar 15, 2017, at 8:27 AM, Mark Kaiser
<kaisermarkd@hotmail.com> wrote:

Hi Guys:

Dr. Sagi Kuznits, this is Dr. Tim Warren.

Dr. Warren, Dr. Kuznits is a neurosurgeon in PA
and has used the NSS before and is now looking
to move to Stivax.

He would like to speak to you briefly
regarding compliance matters of the Stivax
device.

Please take this as an introduction between the
two of you.

Thank You,

Mark

Cell: 317-691-7191

NC000147

# Exhibit "E"

**From:** Sagi Kuznits <skuznits@aol.com>
**Date:** March 19, 2017 at 8:28:50 PM EDT
**To:** Alex Landfield <adnl007@hotmail.com>
**Cc:** Mark Kaiser <kaisermarkd@hotmail.com>
**Subject: Re: Introduction**

Thanks for your input

Sent from my iPhone

On Mar 18, 2017, at 10:27 PM, Alex Landfield <adnl007@hotmail.com> wrote:

Dr Kuznits,
We have been using Stivax usually for chronic back and neck pain refractory to medication, therapy, epidural
injections, etc. We have also used it for severe Trigeminal Neuralgia, migraine, and in a case of fibromyalgia. I
have only started using it fairly recently, but the response has been excellent in many (but not all) of the cases.
The trigeminal neuralgia patient had a dramatic response and several of the other patients have had significant
improvement so far.  Yes we have been billing as recommended by Mark and have not had problems. Hope this
is helpful.
Best regards,
Alex Landfield

Sent from my iPhone

On Mar 18, 2017, at 4:14 PM, Sagi Kuznits <skuznits@aol.com> wrote:

> Hi dr landfield. I like your website. I am a neurosurgeon in the Philadelphia area. Wanted to know
> for which types of pain do you use stivax and patient response. Also are you billing as
> recommended using the stimulator implant code and any issues with reimbursement from insurance
> Thxs
>
> Sent from my iPhone
>
> On Mar 17, 2017, at 7:41 PM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:
>
>> Hi Guys:
>>
>> Dr. Sagi Kuznits this is Dr. Alex Landfield.

NC000127

Dr. Sagi is looking to bring Stivax into his clinic and asked to speak to another MD about the success they have had in their office from a clinical setting. Dr. Landfield has seen great success with all types of patients within his office.

Please take this as an introduction between the two of you.

Thank You,

Mark

*Cell: 317-691-7191*

NC000128

# Exhibit "F"

## Kristy Schugsta

**From:** Sagi Kuznits <skuznits@aol.com>
**Sent:** Wednesday, December 13, 2017 10:08 PM
**To:** Kristy Schugsta
**Subject:** Fwd: New Stivax Coding/Conference Call Schedule
**Attachments:** New Suggested Stivax Coding.docx

Sent from my iPhone

Begin forwarded message:

> **From:** Mark Kaiser <kaisermarkd@hotmail.com>
> **Date:** December 13, 2017 at 10:22:49 AM EST
> **Subject: New Stivax Coding/Conference Call Schedule**
>
> Hello:
> I hope everyone is having a great Holiday season.
>
> We at Doc Solutions have fielded several inquiries recently from clients across the country regarding Stivax coding. Please view this memo as a way to proceed forward.
>
> After working closely with our compliance team over the past few weeks we are very happy to announce a new coding set that is to be used effectively immediately.
>
> Please find this attached above.
>
> In an attempt to help answer questions and alleviate concerns, we have scheduled a list of conference calls below.
>
> I strongly suggest that someone on your team be available for at least one of the calls so that all questions can be asked and further discussion can be had about how to best move forward with Stivax in your office.
>
> Conference Call Line:
> 267-930-4000
>
> Password:
> 682658
>
> Call Dates And Times (all times listed are on Eastern Standard Time)
>
> Wednesday 12/13
> 12PM
> 6PM

1

NC000181

Friday 12/15
10AM
1PM

Monday 12/18
10AM
1PM

The calls will go over current billing guidelines, coding, billing and how to utilize the two different billing sets listed on the coding sheet above.

Expect the calls to last 10 minutes with additional time added as needed for Q&A.

To respect everyones busy schedule we will start all calls at the exact times listed.

I look forward to speaking to everyone here soon!

Thank You,
Mark Kaiser
Cell: 317-691-7191
Doc Solutions CEO
National Account Manager, Stivax Neurostimulator

2

NC000182

## Coding for the Stivax Stimulator

Coding for Stivax Stimulator

Tract One

| Commercial | Medicare | Workers Compensation |
|---|---|---|
| Day 1<br>99213<br>L8680<br>L8686 | Day 1<br>99213<br>L8679 | Day 1<br>99213<br>L8680<br>L8686 |
| Day 21<br>99213<br>95970-95972<br>63663 | Day 21<br>99213<br>95970-95972<br>63663 | Day 21<br>99213<br>95970-95972<br>63663 |
| Day 42<br>99213<br>63663 | Day 42<br>99213<br>63663 | Day 42<br>99213<br>63663 |

Tract Two

| Commercial | Medicare | Workers Compensation |
|---|---|---|
| Day 1<br>99213<br>L8680<br>L8686 | Day 1<br>99213<br>L8679 | Day 1<br>99213<br>L8680<br>L8686 |
| Day 21<br>99213<br>95970-95972<br>63663<br>L8680 | Day 21<br>99213<br>95970-95972<br>63663 | Day 21<br>99213<br>95970-95972<br>63663 |
| Day 42<br>99213<br>63633 | Day 42<br>99213<br>L8679 | Day 42<br>99213<br>63663 |

This document and the information contained herein is for general information purposes only and is not intended and does not constitute legal, reimbursement, coding, business, or other advice. Furthermore, it is not intended to increase or maximize payment by any payer. Nothing

in this document should be construed as a guarantee regarding levels of reimbursement, payment, or charge, or that reimbursement or other payment will be received. Similarly, nothing in this document should be viewed as instructions for selecting any particular code. The ultimate responsibility for coding and obtaining payment/reimbursement remains with the customer. This includes the responsibility for accuracy and veracity of all coding and claims submitted to third-party payers. Also note that the information presented herein represents only one of a number of potential scenarios, based on the assumptions, variables and data presented.

Explanation of the codes

## L8679

Implantable neurostimulator, pulse generator, any type

## L8680

Implantable neurostimulator electrode, each

This code is not payable by Medicare and should never be billed to any Medicare or Medicare Advantage Plan carrier.

## L8686

Implantable neurostimulator pulse generator, single array, non-rechargeable, includes extension

## 63663

Revision including replacement, when performed, of spinal neurostimulator electrode percutaneous array(s), including fluoroscopy, when performed

## 95970

Analyze Neurostimulator no programing

Electronic analysis of implanted neurostimulator pulse generator system (eg, rate, pulse amplitude, pulse duration, configuration of wave form, battery status, electrode select ability, output modulation, cycling, impedance and patient compliance measurements); simple or complex brain, spinal cord, or peripheral (ie,

cranial nerve, peripheral nerve, sacral nerve, neuromuscular) neurostimulator pulse generator/transmitter, without reprogramming

## 95971

Analyze Neurostimulator Simple

Electronic analysis of implanted neurostimulator pulse generator system (eg, rate, pulse amplitude, pulse duration, configuration of wave form, battery status, electrode select ability, output modulation, cycling, impedance and patient *compliance measurements); simple spinal cord, or peripheral (ie, peripheral nerve,* sacral nerve, neuromuscular) neurostimulator pulse generator/transmitter, with intraoperative or subsequent programming

## 95972

Analyze Neurostimulator Complex

Electronic analysis of implanted neurostimulator pulse generator system (eg, rate, pulse amplitude, pulse duration, configuration of wave form, battery status, electrode select ability, output modulation, cycling, impedance and patient compliance measurements); complex spinal cord, or peripheral (ie, peripheral nerve, sacral nerve, neuromuscular) (except cranial nerve) neurostimulator pulse generator/transmitter, with intraoperative or subsequent programming

Diagnosis codes that support the use of this CPT-codes 95970-95972

| | |
|---|---|
| M47.24 | Other spondylosis with radiculopathy, thoracic region |
| M47.25 | Other spondylosis with radiculopathy, thoracolumbar region |
| M47.26 | Other spondylosis with radiculopathy, lumbar region |
| M47.27 | Other spondylosis with radiculopathy, lumbosacral region |
| M47.28 | Other spondylosis with radiculopathy, sacral and sacrococcygeal region |
| M47.814 | Spondylosis without myelopathy or radiculopathy, thoracic region |
| M47.815 | Spondylosis without myelopathy or radiculopathy, thoracolumbar region |
| M47.816 | Spondylosis without myelopathy or radiculopathy, lumbar region |
| M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region |
| M47.818 | Spondylosis without myelopathy or radiculopathy, sacral and sacrococcygeal region |
| M47.894 | Other spondylosis, thoracic region |
| M47.895 | Other spondylosis, thoracolumbar region |
| M47.896 | Other spondylosis, lumbar region |

| | |
|---|---|
| M47.897 | Other spondylosis, lumbosacral region |
| M47.898 | Other spondylosis, sacral and sacrococcygeal region |
| M50.11 | Cervical disc disorder with radiculopathy, high cervical region |
| M50.121 | Cervical disc disorder at C4-C5 level with radiculopathy |
| M50.122 | Cervical disc disorder at C5-C6 level with radiculopathy |
| M50.123 | Cervical disc disorder at C6-C7 level with radiculopathy |
| M50.13 | Cervical disc disorder with radiculopathy, cervicothoracic region |
| M51.14 | Intervertebral disc disorders with radiculopathy, thoracic region |
| M51.15 | Intervertebral disc disorders with radiculopathy, thoracolumbar region |
| M51.16 | Intervertebral disc disorders with radiculopathy, lumbar region |
| M51.17 | Intervertebral disc disorders with radiculopathy, lumbosacral region |
| M51.24 | Other intervertebral disc displacement, thoracic region |
| M51.25 | Other intervertebral disc displacement, thoracolumbar region |
| M51.26 | Other intervertebral disc displacement, lumbar region |
| M51.27 | Other intervertebral disc displacement, lumbosacral region |
| M51.34 | Other intervertebral disc degeneration, thoracic region |
| M51.35 | Other intervertebral disc degeneration, thoracolumbar region |
| M51.36 | Other intervertebral disc degeneration, lumbar region |
| M51.37 | Other intervertebral disc degeneration, lumbosacral region |
| M54.11 | Radiculopathy, occipito-atlanto-axial region |
| M54.12 | Radiculopathy, cervical region |
| M54.13 | Radiculopathy, cervicothoracic region |
| M54.14 | Radiculopathy, thoracic region |
| M54.15 | Radiculopathy, thoracolumbar region |
| M54.16 | Radiculopathy, lumbar region |
| M54.17 | Radiculopathy, lumbosacral region |
| M54.18 | Radiculopathy, sacral and sacrococcygeal region |
| M54.2 | Cervicalgia |
| M54.5 | Low back pain |

## 99213

Office Visit, Established

Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components:
- An expanded problem focused history;
- An expanded problem focused examination;
- Medical decision making of low complexity.

Counseling and coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of low to moderate severity.

NC000186

## General Information

Patients must have undergone careful screening, evaluation, and diagnosis by a multidisciplinary team prior to implantation. (Such screening must include psychological, as well as physical evaluation). Documentation of the history and careful screening must be available in the patient chart if requested. Patients being selected for a trial

- Must not have active substance abuse issues.
- Must undergo proper patient education, discussion, and disclosure including an extensive discussion of the risks and benefits of this therapy.
- Must undergo appropriate psychological screening

# Exhibit "G"

