**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NEUROSURGICAL CARE, LLC,

     Plaintiff,

          v.

BIEGLER GMBH; SOLACE
ADVANCEMENT, LLC; JAMES W.
CARPENTER; DOC SOLUTIONS LLC;
MARK KAISER; LIZ O'NEILL; ABC
CORPS 1-50; and JOHN DOES 1-50,

     Defendants.

Civil Action No. 19-5751

Judge John Milton Younge

DOC SOLUTIONS LLC; MARK
KAISER,

     Third-Party Plaintiffs,

          v.

DR. TIMOTHY WARREN,

     Third-Party Defendant.

**THIRD-PARTY COMPLAINT BY DEFENDANTS DOC SOLUTIONS LLC AND MARK
KAISER AGAINST THIRD-PARTY DEFENDANT DR. TIMOTHY WARREN**

     Defendants/Third-Party Plaintiffs Doc Solutions LLC and Mark Kaiser (collectively,
"Third-Party Plaintiffs"), for their Third-Party Complaint against Third-Party Defendant Dr.
Timothy Warren, allege as follows:

**PARTIES**

     1.     Third-Party Plaintiff Doc Solutions LLC ("Doc Solutions") is a Florida Limited
Liability Company, with a former principal place of business and mailing address located at
6160 State Road 70 East Suite 103, Bradenton, Florida 34203.  This office is, and has been,

permanently shut down and all business matters are now forwarded to 1767 Lakewood Ranch Boulevard, #326, Bradenton, Florida 34211.

2.    Doc Solutions is co-owned by Third-Party Plaintiff Mark Kaiser ("Mr. Kaiser"), a resident of the State of Florida.

3.    Third-Party Defendant Dr. Timothy Warren ("Dr. Warren") is, upon information and belief, a resident of the State of Kansas. Dr. Warren is the founder and director of Titan Medical Center, located at 1415 West 31st Street, Wichita, Kansas 67217.

4.    Dr. Warren holds himself out as a practicing chiropractor who has been in practice for over twenty years, and is the founder and director of Titan Medical Center, a family practice, in Wichita, Kansas.[1]  In addition, Dr. Warren is described as "[p]assionate about protecting the integrity of the field and managing liability," as well as "a certified Independent Medical Claims Examiner, Chiropractic Insurance Consultant, Professional Coder, and Professional Compliance Officer, among several other certifications."[2]

5.    A website that prominently displays the Titan Medical Center logo and is apparently affiliated with Dr. Warren further describes his expertise in coding and counseling to the medical profession as follows:

> His breadth of experience as a chiropractor informs his concurrent position as the President of Titan Medical Compliance, where he is a consultant and coach for individual doctors and clinics concerning coding and compliance issues and implementation. An expert on the subject, Dr. Warren's depth of knowledge is sought out by many.  He regularly lectures on E/M and CPT coding and billing, diagnosis, state compliance issues, as well as fraud and abuse issues, and has presented over 100 times in the last five years throughout the United States and Mexico.  Driven to share his knowledge, he has taught multiple webinars for the . . . Chirocode Institute and regularly helps individual doctors with the implementation of compliance programs on coding, billing and documentation.

[1]  *See* https://titanmedcenter.com/about/, attached as Exhibit A.

[2]  *See* https://www.lifetimeweightlosswichita.com/our-team/, attached as Exhibit B.

## JURISDICTION AND VENUE

6.      Third-Party Plaintiffs incorporate by reference paragraphs 1-5 as if fully set forth herein.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over Dr. Warren because he has sufficient minimum contacts in this state and District through communications with residents of this state and District related to the subject matter of this action, such that the exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Pennsylvania.  Third-Party Plaintiffs marketed and sold Stivax in this state and District and, on the represented expertise, advice, and guidance of Dr. Warren, made representations about billing and coding for Stivax to healthcare providers in this state and District, including to Doc Solutions' customers.  Dr. Warren himself also made representations about billing and coding for Stivax to healthcare providers in this state and District, including to Doc Solutions' customers.

10.     Venue is also proper in this District because Dr. Warren is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

11.      Third-Party Plaintiffs incorporate by reference paragraphs 1-5 as if fully set forth herein.

12.     Mr. Kaiser first met Dr. Warren in either 2011 or 2012.

13.     In 2012, Mr. Kaiser started a medical device company called ProTech Medical, through which he sold transcutaneous electrical nerve stimulation ("TENS") units and back braces, and in early 2014 began contracting with Dr. Warren to serve as ProTech's compliance officer.

14.     When Mr. Kaiser began selling Stivax through his new company, Doc Solutions, in the fall of 2016, Dr. Warren continued to provide advice and guidance on compliance issues, including coding and billing advice specifically for Stivax.

15.     Dr. Warren was not employed by Doc Solutions.  Upon information and belief, Dr. Warren was regularly paid for his Stivax compliance advice during this time by Solace Advancement, the U.S. importer and master distributor for Biegler GmbH ("Biegler"), the manufacturer of Stivax.

16.     Because of Mr. Kaiser's lack of experience with medical device compliance, particularly coding and billing, he relied upon Dr. Warren's represented expertise, advice, training, and guidance on how Stivax should be coded and billed to Medicare.

17.     Mr. Kaiser was not previously familiar with the Stivax device and learned about its use and design from Solace Advancement and Jim Carpenter before Doc Solutions began selling it.

18.     From the Fall of 2016 through early 2019, Mr. Kaiser and Dr. Warren regularly engaged in weekly conference calls, during which Dr. Warren answered any coding and billing questions Mr. Kaiser had about Stivax.   Jim Carpenter, of Solace Advancement, usually participated in these calls.

19.     Mr. Kaiser would often use Dr. Warren's exact verbiage from their discussions when communicating with Doc Solutions' customers.

20.     For example, on several occasions between the Fall of 2016 and 2019, Dr. Warren explained to Mr. Kaiser through calls, emails, and texts that Stivax was an "implantable" device because the electrode needles were percutaneously implanted into the ear.   Mr. Kaiser subsequently passed this same information along to Doc Solutions' customers.

21.     On other occasions, between the Fall of 2016 and 2019, Dr. Warren told Mr. Kaiser through calls, emails, and texts that while the Instructions For Use ("IFU") stated that Stivax was to be used by qualified practitioners of acupuncture, other medical providers, including mid-level practitioners, nurse practitioners, physician's assistants, and medical doctors, were also qualified to use Stivax.   Dr. Warren specifically guided medical doctors to be the medical providers fitting the device from early 2017 going forward.   Mr. Kaiser subsequently passed this information along to Doc Solutions' customers.

22.     Mr. Kaiser also witnessed Dr. Warren, on numerous occasions, speak directly to health-care providers other than acupuncturists to support their use of Stivax.   Dr. Warren later recommended, through calls, emails, and texts, that medical doctors use Stivax.

23.     Mr. Kaiser relied on Dr. Warren's represented expertise, advice, and guidance when relaying information about Stivax to medical providers and other Doc Solutions customers.

24.     Dr. Warren also provided Mr. Kaiser with training on device coding and would often send Mr. Kaiser compliance and coding recommendation documents that Mr. Kaiser would forward to Doc Solutions' customers.

25.     Mr. Kaiser would use, or sometimes just reference, these compliance and coding recommendation documents in conversations with Doc Solutions' customers.

26.     In addition to the information Dr. Warren gave to Mr. Kaiser to send to Doc Solutions' customers, Dr. Warren also had extensive, direct communications with Doc Solutions'

customers, including Plaintiff Neurosurgical Care, LLC ("Neurosurgical Care") and Dr. Sagi Kuznits ("Dr. Kuznits"), about compliance, coding, and billing for Stivax.

27.     When Doc Solutions' customers posed questions related to coding to Mr. Kaiser, Mr. Kaiser would frequently clarify and discuss those questions with Dr. Warren, and ask Dr. Warren to contact the inquiring customers directly to address their questions.

28.     For example, when some customers expressed concern with the use of the L8679 code for Stivax, Mr. Kaiser discussed this issue with Dr. Warren and, in response, Dr. Warren opined that the L8679 code was a valid code for Stivax.  Upon receiving this direction, Mr. Kaiser asked Dr. Warren to contact Doc Solutions' customers directly and convey this same information to the providers.  Dr. Warren did so.

29.     In particular, Dr. Warren had several email and other communications with Dr. Kuznits about Stivax coding, including about the use of the L8679 code.

30.     Mr. Kaiser introduced Dr. Kuznits to Dr. Warren by email in March 2017 after Dr. Kuznits contacted Doc Solutions with questions about Stivax compliance.  A true and correct copy of the March 2017 email chain between Kaiser, Warren, and Kuznits is attached hereto as Exhibit C.

31.     From that point on, Dr. Warren had several communications with Dr. Kuznits about Stivax coding and billing, some of which Mr. Kaiser was not present for and only learned about after the fact.

32.     Thus, if billing codes used by Neurosurgical Care in connection with the Stivax device were later determined to be erroneous or improper, such incorrect or improper use was then unknown to Doc Solutions and to Mr. Kaiser, who both consistently relied upon the training

and represented expert advice of Dr. Warren, as well as the advice and guidance he provided directly to Neurosurgical Care, among other providers and other Doc Solutions customers.

## FIRST CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION

33.     Third-Party Plaintiffs incorporate by reference paragraphs 1-5 and 12-32 as if fully set forth herein.

34.     As set forth above, Dr. Warren trained Third-Party Plaintiffs on the design, use, and coding for Stivax and additionally advised Third-Party Plaintiffs on numerous occasions how to explain these topics to healthcare providers, including to Doc Solutions' customers.

35.     The representations by Dr. Warren were material to the transactions at issue because they were either made directly to healthcare providers or Third-Party Plaintiffs, and Third-Party Plaintiffs relied on Dr. Warren in passing on these representations to healthcare providers (including Doc Solutions' customers), who then purchased Stivax and billed under the codes recommended by Dr. Warren.

36.     Dr. Warren made these misrepresentations to Third-Party Plaintiffs and healthcare providers falsely, with knowledge of their falsity, or with recklessness as to whether the misrepresentations were true or false.

37.     Dr. Warren knew or should have known these misrepresentations were material to all who relied upon them.

38.     Dr. Warren made these misrepresentations to Third-Party Plaintiffs with the intent to mislead them and induce them into relaying the misrepresentations to healthcare providers, including to Doc Solutions' customers, in order to get the providers to purchase Stivax and submit claims to Medicare for reimbursement.

39.     Dr. Warren also made these misrepresentations directly to the healthcare providers, including to Doc Solutions' customers, with the intent to mislead the providers and induce them to purchase Stivax and to submit claims to Medicare for reimbursement.

40.     Third-Party Plaintiffs justifiably relied on Dr. Warren's misrepresentations and, in relying on those misrepresentations, relayed the information to healthcare providers, including to Doc Solutions' customers.

41.     As a direct and proximate cause of Dr. Warren's fraudulent misrepresentations, Third-Party Plaintiffs have been subject to significant legal costs.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

42.     Third-Party Plaintiffs incorporate by reference paragraphs 1-5 and 12-32 as if fully set forth herein.

43.     Dr. Warren negligently misrepresented to Third-Party Plaintiffs and healthcare providers, including to Doc Solutions' customers, both the design and use of Stivax and how to bill and code Stivax for Medicare reimbursement.

44.     Dr. Warren knew or should have known these misrepresentations were false.

45.     Dr. Warren knew or should have known these misrepresentations were material to all who relied upon them.

46.     Dr. Warren knowingly made these misrepresentations to Third-Party Plaintiffs with the intent to mislead them and induce them into relaying the misrepresentations to healthcare providers, including to Doc Solutions' customers, in order to induce the providers to purchase Stivax and submit claims to Medicare for reimbursement.

47.     Dr. Warren knowingly made these misrepresentations to the healthcare providers, including to Doc Solutions' customers, with the intent to mislead the providers and induce them to purchase Stivax and submit claims to Medicare for reimbursement.

48.     Third-Party Plaintiffs justifiably relied on Dr. Warren's misrepresentations and, in relying on those misrepresentations, relayed the information to health care providers, including to Doc Solutions' customers.

49.     As a direct and proximate cause of Dr. Warren's negligent misrepresentations, Third-Party Plaintiffs have been subject to significant legal costs.

### THIRD CAUSE OF ACTION
### CONTRIBUTION

50.     Third-Party Plaintiffs incorporate by reference paragraphs 1-5 and 12-32 as if fully set forth herein.

51.     Neurosurgical Care seeks to hold Third-Party Plaintiffs liable for violation of the UTPCPL, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and negligence.

52.     To the extent Third-Party Plaintiffs are found liable to Neurosurgical Care for damages for violation of the UTPCPL, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, or negligence, Dr. Warren is liable as a joint tortfeasor to Third-Party Plaintiffs, pursuant to Pa. Cons. Stat. § 8324, for apportionment of damages based on his actual degree of fault.

WHEREFORE, Third-Party Plaintiffs respectfully request judgment in their favor and against Dr. Warren on each of the above causes of action for damages, costs, pre-judgment interest, and such other and further relief as this Court deems just and proper.

Ben Curtis (Fl. Atty. ID No. 118156)
Admitted pro hac vice
McDermott Will & Emery LLP
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
(305) 329-4442
bcurtis@mwe.com

Justin C. Danilewitz
PA Attorney ID 206034
Andrea P. Brockway
PA Attorney ID 208901
SAUL EWING ARNSTEIN & LEHR
LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, PA  19102
215-972-7114
Justin.Danilewitz@saul.com
Andrea.Brockway@saul.com

Dated: March 12, 2020

*Attorneys for Defendants, Doc Solutions,
LLC and Mark Kaiser*

# EXHIBIT A



📍 1415 W. 31st. S. Wichita, KS 67217    📞 316-529-3700    📞 316-529-0200    ✉ office@titanmedcenter.com



| HOME | SERVICES | NEW PATIENTS | BLOG | ABOUT US | CONTACT | MEMBER |

# About Us

Home    >    About Us



## About us

Titan Medical Center was founded in Oct. of 2016 when the Chiropractic Care Center was renamed. This renaming was done so that we could offer more services to our patients.

The Chiropractic Care Center was originally founded in May of 1995 when Dr. Tim Warren combined Warren Chiropractic with The Chiropractic Care Center at the location of 2780 S. Seneca here in Wichita. We remained at that location until April 1998 when we moved to 1415 W. 31st S. At this location, the Chiropractic Care Center become an integral part of the southwest Wichita community offering chiropractic services,

## We can deal with:

**Chiropractic**
Advanced spinal correction

**Personal Injury**
Don't live with chronic pain

**Posture Experts**
Precise posture correction

**Lifetime Metabolic**
Weight Loss that Stays Lost!

**This website uses cookies.** By visiting this website you are accepting its use of cookies.    More Info    Close

We were at this location until Sept. 4, 2013, when there was a fire at our office that destroyed the practice. We were able to reopen very quickly at our current location where we are offering the same services as before. However, in the Fall of 2016, Dr. Warren became Certified Postural Experts and we are currently in the process of adding this very valuable service to our practice. With this service, we are able to not only relieve your pain but correct the underlying postural problem that was the cause of the pain. This will not only relieve your pain but also restore your health and ability to perform optimally.

**Contact Us**

Address:
1415 W. 31st. S.
Wichita, KS 67217

Phone:
316-529-3700
316-529-0200

Email:
office@titanmedcenter.com

Contact
form



# Dr. Tim Warren

Dr. Tim Warren is founder and director of Titan Medical Center, formerly the Chiropractic Care Center, a family practice in Wichita, KS. He has been in practice for over 20 years and has been active in the community by serving as the Chairman for Toys for Tots and Board Member for Wichita Baptist Homeless Ministry.

Dr. Warren's past positions have been with the KCA-Sedgwick County Chapter as Director from 2002-2003. He served as the Kansas Chiropractic Association's Vice President for 2004 and served as the President for 2005 and 2006. Dr. Warren was voted 2008 Kansas Doctor of the Year by his peers and the Kansas Chiropractic Association.

He is a member of the following organizations: American Chiropractic Association, Kansas Chiropractic Association, International Academy of Clinical Neurology, and American Academy of Professional Coders, American Health Information Management Association, and American Board of Disability Analysts.

**This website uses cookies.** By visiting this website you are accepting its use of cookies.   More Info      Close

© 2018 Titan Medical Center. All Rights Reserved. | Powered by Mountain Man Digital



Sitemap | Privacy Policy | Terms and Conditions

**This website uses cookies.** By visiting this website you are accepting its use of cookies.    More Info    Close

# EXHIBIT B



# DR. TIM WARREN

Chiropractor

———

Dr. Timothy Warren has been a Chiropractor for over 20 years and maintains current licenses in both Kansas and Colorado. Originally from Kansas, Dr. Warren received his Doctor of Chiropractic from Cleveland Chiropractic College in 1993 and has since completed over 2500 post doctorate hours. Passionate about protecting the integrity of the field and managing liability, he is a certified Independent Medical Claims Examiner, Chiropractic Insurance Consultant, Professional Coder, and Professional Compliance Officer, among several other certifications.



Currently, he is the Director of the Titan Medical Center in Wichita where he is proud to have provided care for his patients since 1994. He finds it rewarding to regularly provide chiropractic treatment to patients with acute and chronic conditions, personal injury conditions as well as workers' compensation injuries.

His breadth of experience as a chiropractor informs his concurrent position as the President of Titan Medical Compliance, where he is a consultant and coach for individual doctors and clinics concerning coding and compliance issues and implementation. An expert on the subject, Dr. Warren's depth of knowledge is sought out by many. He regularly lectures on E/M and CPT coding and billing, diagnosis, state compliance issues, as well as fraud and abuse issues, and has presented over 100 times in the last five years throughout the United States and Mexico. Driven to share his knowledge, he has taught multiple webinars for the for Chirocode Institute and regularly helps individual doctors with the implementation of compliance programs on coding, billing and documentation. Truly dynamic, his depth of expertise stems from his direct experiences as a chiropractor, as a consultant working with many different doctors and clinics, and conversely working with insurance companies to resolve their issues concerning the implementation of documentation and treatment guidelines.

Dr. Warren's dedication and contributions to the field have been widely recognized by his peers.  He has been awarded the Kansas Chiropractic Association Doctor of the Year, the Presidential Commendation for Outstanding service to the profession, and the Presidential Commendation for Outstanding service to the profession.

**\*Results May Vary: Causes for being overweight or obese vary from person to person. Whether genetic or environmental, it should be noted that food intake, rates of metabolism and levels of exercise and physical exertion vary from person to person. This means weight loss results will also vary from person to person. No individual result should be seen as typical. These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. Our privacy policy**

# EXHIBIT C

## Re: Introduction

Timothy Warren <stivax@titanmedicalcompliance.com>
Fri 3/24/2017 5:22 PM
**To:** Sagi Kuznits <skuznits@aol.com>; Mark Kaiser <kaisermarkd@hotmail.com>

Dr. Sagi,

I do not suggest any coding of the 64555 with any insurance company without having prior authorization.

Dr. Warren

---

**From:** Sagi Kuznits <skuznits@aol.com>
**Sent:** Wednesday, March 22, 2017 4:34:49 PM
**To:** Mark Kaiser
**Cc:** Timothy Warren
**Subject:** Re: Introduction

Hey mark. Any word from the Dr Warren

Sent from my iPhone

On Mar 16, 2017, at 9:37 AM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:

> Many commercial policies have gone away from paying the 64555 code as well. I would suggest, as I am sure Dr. Warren would as well, having billing pull the commercial policy plans of the patients you are looking to place the device on and checking to see if they still recognize the code and go from there.
>
> 64555 is still an accepted billing practice for billing within a surgery center via the facility fee.
>
> ---
>
> **From:** Sagi Kuznits <skuznits@aol.com>
> **Sent:** Thursday, March 16, 2017 9:01:11 AM
> **To:** Mark Kaiser
> **Cc:** stivax@titanmedicalcompliance.com
> **Subject:** Re: Introduction
>
> Never used auricular stim with Medicare patients
>
> Sent from my iPhone
>
> On Mar 16, 2017, at 8:57 AM, Mark Kaiser <kaisermarkd@hotmail.com> wrote:
>
>> Not to overstep my boundaries here, but the 64555 code is not suggested to be used with Stivax application. Medicare deemed it an inappropriate code at the end of 2016.

**From:** Sagi Kuznits <skuznits@aol.com>
**Sent:** Thursday, March 16, 2017 8:55:48 AM
**To:** Mark Kaiser
**Cc:** stivax@titanmedicalcompliance.com
**Subject:** Re: Introduction

Outpatient setting

Sent from my iPhone

On Mar 16, 2017, at 8:37 AM, Mark Kaiser <kaisermarkd@hotmail.com>
wrote:

> Doc;
> Were you billing the 64555 out as you being the rendering provider
> in a surgery center or in an outpatient setting?
>
> Thank,
> Mark
>
> ─────────────────────────────
>
> **From:** Sagi Kuznits <skuznits@aol.com>
> **Sent:** Thursday, March 16, 2017 8:15:43 AM
> **To:** Mark Kaiser
> **Cc:** stivax@titanmedicalcompliance.com
> **Subject:** Re: Introduction
>
> Good morning dr warren. I have used the pstim and nss auricular
> units. I billed the 64555 code. Before I purchase the Stivax system
> I want to make sure that the Generator implant code is
> appropriate as I do not want any issues with Medicare. Please
> advise.
> Thank you.
>
> Sent from my iPhone
>
> On Mar 15, 2017, at 8:27 AM, Mark Kaiser
> <kaisermarkd@hotmail.com> wrote:
>
> > Hi Guys:
> > Dr. Sagi Kuznits, this is Dr. Tim Warren.
> >
> > Dr. Warren, Dr. Kuznits is a neurosurgeon in PA and has
> > used the NSS before and is now looking to move to
> > Stivax.
> >
> > He would like to speak to you briefly
> > regarding compliance matters of the Stivax device.

Please take this as an introduction between the two of you.

Thank You,
Mark
Cell: ▮▮▮▮▮▮▮▮▮