IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEUROSURGICAL CARE, LLC | : |
|     Plaintiff, | : |
|   v. | : |
| BIEGLER GMBH; SOLACE ADVANCEMENT, LLC; JAMES W. CARPENTER; DOC SOLUTIONS LLC; MARK KAISER; LIZ O'NEILL; ABC CORPS 1-50; and JOHN DOES 1-50 | : : : : : Case No. 2:19-cv-05751-JMY |
|     Defendants. | : |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY SUPPORTING DENIAL OF DEFENDANTS SOLACE ADVANCEMENT, LLC AND JAMES W. CARPENTER'S MOTION TO DISMISS (ECF No. 47) AND GRANTING PLAINTIFF'S CROSS-MOTION FOR ALTERNATIVE SERVICE ON BIEGLER GMBH PURSUANT TO RULE 4(F)(3) (ECF No. 61)**

Plaintiff Neurosurgical Care, LLC ("Plaintiff") respectfully submits notice to this Court of recent authority contradicting the arguments asserted by Defendants Solace Advancement, LLC ("Solace") and James W. Carpenter ("Carpenter") (ECF No. 47) (collectively "Defendants").  On December 7, 2020, Defendants entered into a Settlement Agreement with the United States Department of Justice, the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, and the Office of Personnel Management (collectively the "United States"), which is attached hereto as Exhibit 1.  This Settlement Agreement contradicts Defendants assertions to this Court, and recent authority rejects several legal arguments relied upon by Defendants in their Motion to Dismiss.

1

A.  **RECENT AUTHORITY CONFIRMS PERSONAL JURISDICTION EXISTS OVER SOLACE AND CARPENTER, SO DEFENDANTS' MOTION ON RULE 12(B)(2) GROUNDS SHOULD BE DENIED**

   1.  **Recent Authority Confirms Personal Jurisdiction Exists Over Biegler, Solace and Carpenter Pursuant to 18 U.S.C. § 1965(b)**

Defendants challenged personal jurisdiction (ECF No. 47 at 8-9), but largely abandoned their personal jurisdiction arguments in their reply (ECF No. 65) providing no response to *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d Cir. 2020). *Compare* ECF No. 59 at 8-10 *with* ECF No. 65.  Nonetheless, recent authority interpreting personal jurisdiction pursuant to 18 U.S. C. § 1965(b) confirms Defendants' Rule 12(b)(2) motion lacks merit.  With personal jurisdiction over RICO Co-Defendants Doc Solutions LLC and Mark Kaiser unchallenged and indisputably established, *Laurel Gardens* conclusively establishes personal jurisdiction over Solace and Carpenter who are RICO Defendants. "Notably, the Third Circuit has held that 'a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.'" *LCV Cap. Mgmt., LLC v. Nuova Argo Finanziaria S.p.A.*, No. 2:18-CV-01645, 2021 WL 716728, at *13 (W.D. Pa. Feb. 24, 2021) (quoting *Laurel Gardens, LLC v. McKenna*, 948 F.3d at 117-118) (acknowledging that after *Laurel Gardens,* RICO personal jurisdiction turns exclusively on the ability of the court to exercise personal jurisdiction over "at least one defendant" subject to the RICO claims) attached hereto as Exhibit 2.  Thus, this Court may exercise personal jurisdiction over Solace and Carpenter pursuant to § 1965(b) because, at a minimum, personal jurisdiction is established over RICO co-defendants, Doc Solutions LLC and Mark Kaiser.

   2.  **Recent Authority from the Supreme Court Also Rejects Solace Advancement and Carpenter's Personal Jurisdiction Arguments**

Defendants challenged specific personal jurisdiction (ECF No. 47 at 8-9) and Plaintiff opposed Defendants' personal jurisdiction challenge (ECF No. 59 at 8-11).  On March 25, 2021,

the Supreme Court issued its opinion in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, concluding for purposes of specific jurisdiction that "our most common formulation of the rule demands that the suit arise out of or relate to the defendant's contacts with the forum....[T]he back half...contemplates that some relationships will support jurisdiction without a causal showing." 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (quotation marks and citation omitted) attached hereto as Exhibit 3.  Just as in *Ford Motor Co*., Plaintiff here "brought suit in the most natural State—based on an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that took place there." *Id*. at 1031 (internal quotations omitted).  The conduct material to Plaintiff's claims occurred in Pennsylvania, precisely where suit was brought.

B. **THIS COURT CAN RELY ON OTHER PLEADINGS IN THIS MATTER TO RESOLVE THE RULE 12(B)(6)'S MOTION**

In their reply brief, Defendants argue this Court cannot rely on cross-claims asserted against it in this same matter to resolve the Rule 12(b)(6) motions. ECF No. 65 at 2.  This legal contention is inaccurate as this Court recognized on April 1, 2021.  In *Elnaggar v. Allard*, this Court noted it was proper to take judicial notice of other pleadings, even in a related case, to conclude a party "may not proceed on a theory that relies on a bizarre and idiosyncratic interpretation of Defendants' communication and that is clearly contradicted by the facts." *Elnaggar v. Allard,* No. 19-CV-3743-JMY, 2021 WL 1224062, at *5 (E.D. Pa. Apr. 1, 2021) attached hereto as Exhibit 4.  In doing so, this Court like many before it acknowledged other pleadings are subject to judicial notice and properly considered when resolving a Rule 12(b)(6) motion.  In *Elnagger,* this Court also relied on *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, (3d Cir. 2006), which made clear that "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders,

3

*and items appearing in the record of the case*." *Id.* at 260 (3d Cir. 2006) (internal citations and quotations omitted) (emphasis added).  Defendants' argument seeking to prevent this Court's reliance on Doc Solutions LLC and Mark Kaiser's Cross-Claims against Defendants to resolve the Rule 12(b)(6) motion is wholly without merit.

### C. DEFENDANTS' RULE 12(B)(6) ARGUMENTS ARE CONTRADICTED BY THEIR SETTLEMENT AGREEMENT WITH THE UNITED STATES ENTERED DECEMBER 7, 2020

#### 1. Defendants' Entered a Settlement Agreement with the United States that Confirms the FAC's Allegations

On December 7, 2020, both Solace and Carpenter, entered a Settlement Agreement with the United States for the conduct alleged in the FAC.  A copy of this Settlement Agreement was obtained from the U.S. Department of Justice pursuant to a Freedom of Information Act/Privacy request on May 10, 2021, and is attached hereto as Exhibit 1.  This Settlement Agreement is a matter of public record subject to judicial notice pursuant to Fed. R. Evid. 201, which is an undisputedly authentic document having been obtained directly from the files of the United States.  It is therefore properly considered by this Court to deny Defendants' Rule 12(b)(6) motion. *See Elnaggar v. Allard,* 2021 WL 1224062, at *5 ("A Court may consider and take judicial notice of matters of public record."); *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) ("We may review the 2012 Consent Decree and 2014 Consent Order and Agreement in deciding a 12(b)(6) motion to dismiss for failure to state a claim").  The Settlement Agreement entered by Defendants after the close of the briefing in this matter is now properly before this Court for its consideration in conjunction with several of the specious Rule 12(b)(6) challenges Defendants asserted.

### 2. Carpenter's Effort to Evade Personal Liability Fails

Carpenter seeks to avail himself of Solace's corporate structure to evade personal liability (*see* ECF Nos. 47 at 10-12 and 65 at 3-4) despite every pleading in this case from the FAC to Doc Solutions' Cross-Claims clearly identifies Carpenter's improper conduct as the catalyst for much of the illegal conduct. Now, the Settlement Agreement, to which Carpenter individually named as a party, further establishes the alleged facts of the Stivax fraud and Defendants' key roles in executing this fraudulent scheme to the great harm of Plaintiff and members of the putative class. *See* Ex. 1 at 1-5. Further, the Settlement Agreement reveals the gross undercapitalization of Solace through financial statement provided the United States, which further reveals the sham nature of this corporate shell owned and operated at the whim of Carpenter for the purpose of carrying out the Stivax Enterprise. *See id.* at 8-9. Carpenter's arguments seeking dismissal based on the corporate structure of Solace should be rejected at this stage of the proceedings.

### 3. Defendants' Rule 12(b)(6) Challenges Based on the Factual Allegations of the FAC are Further Negated by the Settlement Agreement Clearly Implicating Solace and Carpenter at the Center of the Stivax Enterprise

The Settlement Agreement, Section D of Recitals presents a summary of the United States' claims against Solace and Carpenter relating to their false marketing of Stivax. *See* Ex. 1 at 1-5. The United States allegations, like those of the FAC, relate to Defendants' "promotion of the P-Stim device and/or the Stivax device from January 1, 2013 through February 29, 2020 as reimbursable by Medicare and as FDA approved is referred to below as the 'Covered Conduct.'" Ex. 1 at 5. Specifically, the United States, like Plaintiff here a year before the United States, allege that Solace and Carpenter:

> 13. From at least as early as November of 2016 through at least the end of 2018, ***the Carpenter Parties conspired with Company A [Doc Solutions, LLC], Person A [Mark Kaiser], and Individual B [Dr. Tim Warren] to promote the Stivax device***

*by falsely representing to medical providers that Medicare reimbursed for the Stivax device and provider services related to the Stivax device.*

14. The Carpenter Parties, Company A, Individual A, and Individual B used the false promise of significant Medicare reimbursements to boost sales of the Stivax device.

15. Specifically, ***Company A, Individual A, and Individual B, with the full knowledge, approval, and support of the Carpenter Parties, falsely communicated to many healthcare providers throughout the United States that it was appropriate to submit claims to Medicare for reimbursement: (a) for the Stivax device by submitting Healthcare Common Procedure Coding System ("HCPCS") codes, including L8679***; and (b) for the medical provider's services applying the Stivax device by submitting a variety of Current Procedural Terminology ("CPT") codes. However, these codes were at all times intended to reimburse for materials and services related to surgically implanted neuro-stimulators that are implanted under the skin by a surgeon in a surgical setting.

16. The HCPCS and CPT codes that Company A, Individual A, and Individual B promoted with Carpenter's knowledge, approval, and support generated thousands of dollars in Medicare reimbursements to Solace customers for each application of a Stivax device, sometimes exceeding $10,000 for each application.

17. *At all times that Solace imported and sold the Stivax device, the Carpenter Parties knew and/or were deliberately ignorant of the fact that Medicare would not knowingly reimburse for the Stivax device or a medical provider's services related to applying the Stivax device.*

18. *The Carpenter Parties knew that CMS rejected an application in 2014 by the distributor of another auricular electro-acupuncture device [P-Stim] and stated that such devices were not reimbursable by Medicare. The Carpenter Parties also received multiple coverage advisories that Medicare Contractors issued, communications from medical providers raising concerns about the propriety of the recommended codes, and other information that put the Carpenter Parties on notice that they were promoting the Stivax device through false and misleading reimbursement advice.*

19. Numerous medical providers submitted thousands of claims to Medicare for the Stivax device by using the billing codes that Company A, Individual A, and Individual B promoted and which Medicare intended only for surgically implanted neuro-stimulators. Medicare paid tens of millions of dollars in reimbursements for these false claims.

20. The Carpenter Parties also generated promotional materials that falsely stated that the Stivax device was approved by the FDA to treat certain chronic pain conditions. The Carpenter parties provided these materials to Company A and Individual A for distribution to customers and prospective customers.

21. *The Carpenter Parties' promotion of P-Stim and Stivax as reimbursable by Medicare, and their promotion of Stivax as FDA approved, also caused false claims to be submitted to TRICARE and FEHBP.*

Ex. 1 at 2-5 (emphasis added). These false claims are submitted by Plaintiff and the class based on the fraud perpetrated by Defendants. Defendants' arguments that they lacked knowledge of the fraud, or Plaintiff's RICO claims lack the requisite facts, or Plaintiff has not suffered RICO injury are completely without merit. *See* ECF No. 47 at 12-18, 66 at 4-9.

Dated: May 21, 2021   */s/ Simon B. Paris*
Simon B. Paris (Admitted *Pro Hac Vice*)
Patrick Howard (Atty. ID #88572)
**SALTZ, MONGELUZZI,**
**& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Telephone:  (215) 496-8282
Facsimile:  (215) 496-0999
sparis@smbb.com
phoward@smbb.com

**CERTIFICATE OF SERVICE**

  I, Simon B. Paris, hereby certify that on May 21, 2021, I caused a true and correct copy of Plaintiff's Notice of Supplemental Authority Supporting Denial of Defendant Solace Advancement, LLC and James W. Carpenter's Motion to Dismiss (ECF No. 47) and Granting Plaintiff's Cross-Motion for Alternative Service on Biegler GmbH Pursuant to Rule 4(F)(3) (ECF No. 61) to be filed via the Court's ECF system, thereby serving all counsel of record who are deemed to have consented to electronic service.

                */s/ Simon B. Paris*
                Simon B. Paris